IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:22-CV-76-FL

| | |
|---|---|
| JUSTIN SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| MATTHEW J. WINEMAN in his official ) | |
| capacity as Sheriff of Jones County, and ) | |
| OHIO CASUALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court upon defendants' motion to dismiss (DE 16) pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been briefed fully and in this posture is ripe for ruling. For the following reasons, the motion is denied.

### STATEMENT OF THE CASE

Plaintiff commenced this civil rights action July 13, 2022, and filed the operative amended complaint December 1, 2022, asserting claims under 42 U.S.C. § 1983 for violation of his constitutional rights as a former employee of the sheriff of Jones County, North Carolina, as well as state law common law and constitutional claims. Plaintiff seeks compensatory damages, declaratory and injunctive relief, attorney's fees, and interest.

Defendants' instant motion seeks dismissal of all claims against them for failure to state a claim upon which relief can be granted.[1] Plaintiff opposes dismissal and defendants replied in

---

[1] Upon filing of plaintiff's amended complaint, the court denied as moot an earlier motion to dismiss filed by defendants. (See Text Order 12/21/2022).

support of their motion. The court has stayed scheduling conference activities pending decision on the instant motion.

## STATEMENT OF THE FACTS

The facts alleged in the complaint[2] may be summarized as follows. Defendant Matthew J. Wineman, in his official capacity as sheriff of Jones County ("defendant sheriff"), is the "successor in office to the late Danny Heath, who was the prior duly elected [s]heriff of Jones County" (hereinafter, "former sheriff Heath"). (Compl. ¶ 2). Defendant Ohio Casualty Insurance Company ("defendant surety") serves as the surety bond holder for defendant sheriff.

In February 2018, plaintiff was hired as a deputy sheriff with the Jones County sheriff's office to perform law enforcement duties, as delegated by defendant sheriff. "At all times during his employment, [plaintiff] was qualified for his position, performed his duties with diligence and competency, and proved himself to be an outstanding employee." (Id. ¶ 31). While employed, plaintiff "attended specialized training . . . in excess of 1500 training hours." (Id. ¶ 32). Plaintiff began his employment "as a Reserve/Part-Time Deputy Sheriff." (Id. ¶ 33). "During his employ, [plaintiff] was required to, and did in fact, complete the in-service training to maintain his sworn law enforcement status" with the North Carolina Sheriff's Training and Standards Commission (the "Commission"). (Id. ¶ 34). According to the complaint, defendant sheriff "has the responsibility to conduct an 'in-service training program' established by the Commission," and to report training completion accurately to the Commission. (Id. ¶¶ 26-29).

Plaintiff "completed his in-service training for the 2017-18 calendar year in December 2018 online at the North Carolina Justice Academy Portal." (Id. ¶ 35). "Unfortunately, after he

---

[2] Hereinafter, all references to the "complaint" in the text or "Compl." in citations in this order are to the amended complaint (DE 14) unless otherwise specified.

2

was hired, the Jones County [s]heriff's [o]ffice appears to have regretted hiring [plaintiff], not due to any deficiencies in his performance, but due to personal issues between plaintiff and [former sheriff Heath] himself that developed into an animus against [plaintiff]." (Id. ¶ 36).

In the beginning of 2019, former sheriff Heath allegedly placed plaintiff on "inactive non-gun carrying status due to [plaintiff's] not being able to work the required number of hours needed to be a Reserve Deputy." (Id. ¶ 37). "A member of the Jones County [s]heriff's [o]ffice under the command, direction, and control of [former sheriff] Heath contacted [plaintiff] in the beginning of 2019 to discuss paperwork that the Commission required when it reviewed Smith's Commission file." (Id. ¶ 38). The sheriff's office representative allegedly asked plaintiff "to sign paperwork presented by said [s]heriff's [o]ffice and assured [plaintiff] that this paperwork was all that needed to be submitted to the Commission in order to be in compliance with Commission requests and thus for [plaintiff] to maintain his sworn status with the Commission." (Id. ¶ 39).

Plaintiff "was not thereafter contacted by anyone from the Jones County [s]heriff's [o]ffice to alert him to any deficiencies with his certification with the Commission." (Id. ¶ 40). "By letter dated 31 May 2019, the Commission wrote to [former sheriff Heath] notifying him that certain information would be needed from the [s]heriff to maintain [plaintiff's] certification." (Id. ¶ 41). "Not only did [d]efendant [s]heriff never inform [plaintiff] of this letter, but a handwritten note on the bottom of the letter reads: 'SHERIFF ADVISED NOT TO NOTIFY.'" (Id.).

Accordingly, former sheriff Heath allegedly "himself intentionally and purposefully directed that [plaintiff] not be notified of information his [o]ffice was required to provide him (and that [plaintiff] was entitled to receive), and the [s]heriff's employees dutifully complied, even though as the head of a department with more than 100 employees [former sheriff Heath] would have been well aware of the need to notify [plaintiff]." (Id.). According to the complaint, former

3

sheriff Heath "did not provide the information requested by the Commission concerning [plaintiff]." (Id.).

As a result of former sheriff Heath's allegedly "intentional concealment of information from him, [plaintiff] did not even begin to suspect that [former sheriff Heath] had failed to act to ensure continuation of his certification until November 2019." (Id.). "In approximately November 2019, [plaintiff] received a 'Report of Separation" letter from the Commission that said the Jones County [s]heriff's [o]ffice was no longer affiliating itself with [plaintiff]." (Id. ¶ 42). Plaintiff "then attempted to contact the Jones County [s]heriff's [o]ffice to receive an explanation for the 'Report of Separation,' but he was unable to speak with anyone who could satisfactorily explain why the letter would have been sent." (Id. ¶ 43).

"In November 2019, [plaintiff] began the hiring process with the [p]olice [d]epartment in Warsaw, North Carolina." (Id. ¶ 44). Plaintiff "was then informed by the [Commission] that he had lost his sworn status from the [Commission] earlier in the year." (Id.). "This was the first [plaintiff] had heard about losing his sworn status from the [Commission]." (Id.). Plaintiff "then again contacted the Jones County [s]heriff's [o]ffice and spoke with the director." (Id. ¶ 45). Plaintiff allegedly "was advised that the [s]heriff's [o]ffice had failed to submit the paperwork to the Commission required for him to retain his sworn status." (Id.). "This was the first time that [plaintiff] learned that paperwork had not been submitted by [former sheriff Heath], and even at this point [plaintiff] was not aware that [former sheriff Heath] had intentionally instructed staff to not return necessary paperwork to the Commission." (Id.).

"As a result of no longer possessing sworn status from the Commission, [plaintiff] could not continue the process of applying to the Warsaw [p]olice [d]epartment." (Id. ¶ 46). "For all practical purposes, [plaintiff's] loss of his certification of sworn status from the Commission

4

effectively ended the possibility of a career in law enforcement with any North Carolina agency, entity, or municipality, as he would have to be recertified through training again on-site at the State's academy—something he is not able to do for a number of personal reasons." (Id. ¶ 47).

**COURT'S DISCUSSION**

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd.  v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[3]

B.  Analysis

1.  Monell liability under 42 U.S.C. § 1983

Defendants argue that plaintiff fails to allege that any policy, custom, or practice of the defendant sheriff harmed him, thus precluding liability for plaintiff's constitutional claims against defendant sheriff under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Defendants further contend that plaintiff cannot rely upon an isolated incident involving a prior, now-deceased, sheriff as a basis for Monell liability against defendant sheriff.  The court disagrees.

---

[3]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

Under Monell, a local government entity may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" to the plaintiff. 436 U.S. at 694. "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) <u>through the decisions of a person with final policymaking authority</u>; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (emphasis added).

Plaintiff's federal constitutional claims in this case implicate the second emphasized category of Monell liability identified in Lytle. The United States Supreme Court has explained the contours of this category following Monell, in Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), and Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 406 (1997). In Pembaur, the court observed "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. at 480. "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." Id. at 481. Thus "municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483. The term "policy" in this context, refers to "a course of action consciously chosen from among various alternatives." Id. at 484.

6

In Brown, the court amplified these concepts, recognizing that "proof that a municipality's . . . authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." 520 U.S. at 405. "Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." Id. In such circumstances a plaintiff has meet the dual requirements of showing that "through its deliberate conduct, the municipality was the moving force behind the injury alleged." Id. at 404. Liability is based then on the allegation that the authorized decisionmaker "had specifically directed the action resulting in the deprivation of petitioner's rights." Id. at 406.

In this case, plaintiff alleges facts giving rise to a plausible inference of Monell liability based upon standards articulated in Pembaur and Brown. Plaintiff alleges that former sheriff Heath had the authority to "conduct an 'in-service training program,'" and to make reports to the Commission regarding completion of training by "each deputy sheriff." (Compl. ¶¶ 26-27). Plaintiff also alleges that former sheriff Heath, as such authorized decisionmaker, personally, and specifically, "directed that [plaintiff] not be notified of information his Office was required to provide him," and "advised [his staff] not to notify" plaintiff. (Id. ¶ 41). Further, plaintiff alleges that former sheriff Heath "intentionally instructed staff to not return necessary paperwork to the Commission." (Id. ¶ 45). In this manner, plaintiff alleges that former sheriff Heath both had final decisionmaking authority to provide notifications to plaintiff and to the Commission, and that former sheriff Heath made "a deliberate choice to follow a course of action . . . from among various alternatives" under his authority, "with respect to the subject matter in question." Pembaur, 475 U.S. at 483. Liability is thus based then on the allegation that the authorized decisionmaker "had

7

specifically directed the action resulting in the deprivation of petitioner's rights." Brown, 520 U.S. at 405.

Defendants suggest that plaintiff's allegations that former sheriff Heath had "personal issues" or "animus" against plaintiff precludes a Monell claim against defendant sheriff in his official capacity. (Def's Mem. (DE 17) at 6; Reply (DE 21) at 1-2). Such allegations, however, give rise to a plausible inference that the "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right." Brown, 520 U.S. at 405. They tend to show that the "municipal action was taken with the requisite degree of culpability" to give rise to a constitutional violation. Id. at 404. Thus, such allegations do not preclude, but rather support, under the circumstances alleged, a Monell claim against defendant sheriff in his official capacity.

Defendants cite a number of cases for the proposition that a "single incident" or "isolated incident" is insufficient to establish Monell liability. (Def's Mem. (DE 17) at 7; Reply (DE 21) at 2-7). These cases are inapposite because they address categories of Monell liability in which "the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so," under which "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Brown, 520 U.S. at 405; see, e.g., Avery v. Burke Cnty., 660 F.2d 111, 114 (4th Cir. 1981) ("A single incident or isolated incidents are normally insufficient to establish supervisory inaction upon which s 1983 liability may be based") (emphasis added); Floyd v. McMahon, No. 5:15-CT-3309-FL, 2016 WL 7650588, at *1 (E.D.N.C. June 17, 2016) (noting that "a few isolated instances of plaintiff's mail being opened" that were "the result of unauthorized subordinate conduct" were insufficient to establish liability) (emphasis added). Under those categories of Monell liability, such as a failure to train or a pattern or practice of unconstitutional conduct, "considerably more proof than the single

incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985); see, e.g., Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984) (addressing circumstances where "supervisory officials may be held liable . . . for the constitutional injuries inflicted by their subordinates") (emphasis added).

Defendants also argue that plaintiff's theory of Monell liability fails because "the former Sheriff lacked the policymaking authority to establish or change North Carolina's state-issued policies regarding certification and training standards." (Reply (DE 21) at 4). Defendants contend that the Commission "is the only entity with the authority to establish or modify law enforcement training and certification standards." (Id.) (emphasis in original). However, this argument misses the mark, because plaintiff does not allege that former sheriff Heath attempted "to establish or change North Carolina's state-issued policies regarding certification and training standards." (Id.). Rather, plaintiff alleges, more narrowly, that former sheriff Heath exercised his decisionmaking authority personally to withhold notification to plaintiff and to the Commission of relevant information regarding plaintiff's training status. (See Compl. ¶¶ 41, 45). Plaintiff alleges that the sheriff "is responsible for all aspects of the direction, management, control and oversight of the Jones County [s]heriff's [o]ffice, including its agents and employees," and that former sheriff Heath "intentionally instructed staff to not return necessary paperwork to the Commission." (Id. ¶¶ 2, 45). In this respect, plaintiff alleges Monell liability on the theory that the sheriff, as "decisionmaker . . . possess[es] 'final authority to establish municipal policy with respect to the action ordered.'" Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (quoting Pembaur, 475 U.S. at 481).

9

In sum, defendants' argument that plaintiff's Monell claims fail as a matter of law because plaintiff only alleges a single incident of misconduct by former sheriff Heath is without merit. Accordingly, that part of defendants' motion premised upon limitations of Monell liability is denied.

2. Equal Protection Claim

In addition to addressing Monell liability, defendants argue that plaintiff's equal protection claim (count II) fails because plaintiff does not allege he was a member of a protected class or that he was subjected to unequal treatment resulting from discriminatory animus. This argument, however, is unavailing because plaintiff does not allege an equal protection claim on a theory of a protected class or unequal treatment resulting from discriminatory animus. Instead, plaintiff alleges that "[t]here was no rational basis for the unequal treatment" he received, and that the "treatment resulted from an arbitrary and/or intentional, but irrational, decision . . . to deny [plaintiff] the opportunity to renew his certification." (Compl. ¶ 63).

As defendants recognize, a challenged governmental action "need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender." Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008). Where plaintiff alleges here that defendant sheriff's actions were "irrational" and without relation to a legitimate governmental interest, (see, e.g., Compl. ¶¶ 62-63), plaintiff has stated a claim on this basis. The court thus leaves for another day upon a more complete record adjudication of plaintiff's equal protection claim.

In sum, defendants' motion in that part seeking to dismiss plaintiff's equal protection claim is denied.

10

3. State Law and Surety Claims

Defendants argue that the court should decline to exercise jurisdiction over plaintiff's state law claims in the event of dismissal of plaintiff's federal claims. Defendants also argue that plaintiff's surety claims necessarily fail if plaintiff fails to allege actionable claims against defendant sheriff.[4] Where the court has denied that part of defendants' motion seeking dismissal of plaintiff's federal claims, the court thus denies the remaining dependent parts of defendants' motion.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 16) is DENIED. Pursuant to Rule 12(a)(4), defendants must serve a responsive pleading within 14 days of entry of this order.

SO ORDERED, this the 6th day of July, 2023.

                                                       LOUISE W. FLANAGAN
                                                     United States District Judge

---

[4] Defendants state in passing that plaintiff's state law claims "lack merit for the same reasons" as his federal claims. (Def's Mem. (DE 17) at 9). This argument is unavailing where the court allows plaintiff's federal claims to proceed forward. In addition, defendants seek dismissal of plaintiff's claims against the surety on the basis that plaintiff has not alleged causation sufficient to establish a negligence claim. However, plaintiff may base his claims against the surety on other underlying claims against defendant sheriff, see N.C. Gen. Stat. § 58-76-5, which are not subject to dismissal on the grounds raised in defendants' motion. Therefore, the court leaves for another day adjudication of plaintiff's claims against the surety.